UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. ______________

KRISTEN KURPINSKY,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD., and
CHUKKA VIRGIN ISLANDS OPERATING CO., LLP,

Defendants.

____________________________________/

KRISTEN KURPINSKY,

Garnishor,

v.

ROYAL CARIBBEAN CRUISES LTD.
d/b/a ROYAL CARIBBEAN GROUP,
CELEBRITY CRUISES INC.
CARNIVAL CORPORATION,
NCL (BAHAMAS) LTD.,
NCL CORP. LTD., and
MSC CRUISES (USA) LLC,

Garnishees.
____________________________________/

**COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND WITH ALTERNATE PRAYER FOR ATTACHMENT PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE B**

The Plaintiff sues Defendants and alleges:

**PRELIMINARY ALLEGATIONS**

1. The Plaintiff, KRISTEN KURPINSKY, is a U.S. citizen and citizen and resident of the State of Arizona.

2. Defendant, ROYAL CARIBBEAN CRUISES LTD. (hereinafter "ROYAL"), is a corporation incorporated under the laws of Liberia having its principal place of business in Miami, Florida.

3. Defendant, CHUKKA VIRGIN ISLANDS OPERATING CO., LLP (hereinafter "CHUKKA"), upon information and belief, is a business entity incorporated in the U.S. Virgin Islands. CHUKKA is amenable to service at: 5093 Dronningens Gade, Ste. 1, Charlotte Amalie, United States Virgin Islands, 00802, United States.

4. Plaintiff's Complaint is brought, in part, under the Court's diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by statute. As such, Plaintiff demands a jury trial on all claims asserted herein. In addition, and/or in the alternative, this matter falls under this Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, as the case presents a maritime tort based upon the factual allegations asserted herein.

5. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States and Florida law, where there is no conflict with General Maritime Law.

6. Further, given that U.S. General Maritime Law applies to the causes of action asserted herein, Plaintiff invokes joint and several liability against the Defendants named herein.

7. Defendants, at all times material hereto, personally or through an agent(s):

a. Operated, conducted, engaged in or carried on a joint business venture in this state and/or county or had an office or agency in this state and/or county;

b. Were engaged in substantial business activity within this state;

c. Operated vessels in the waters of this state;

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

8. As such, Defendants are subject to the jurisdiction of the courts of this State.

**CHUKKA's activities in Florida satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(1)**

9. At all times material hereto, the activities of CHUKKA in Florida satisfy the specific jurisdiction provision of Florida Statute § 48.193(1)(a)(1), by acts that include, but are not limited to: (a) reaching out to Florida-based cruise lines, insurers, cruise industry associates, and/or premium financing companies for purposes of operating, conducting, engaging in, and/or carrying on a business and/or business venture in this state, including with ROYAL, specifically; and/or (b) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Fort Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state", including ROYAL, specifically. In addition, CHUKKA marketed its tours to Florida residents, has ongoing commercial relationships with Florida-based travel agencies, cruise lines, and/or booking platforms, regularly sold its tours to Florida residents, and thereby earned money from Florida residents.

**CHUKKA's activities in Florida satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(2)**

10. At all times material hereto, the activities of CHUKKA in Florida satisfy the specific jurisdiction provision of Florida Statute § 48.193(1)(a)(2), by acts that include, but are not limited to: (a) making misrepresentations about the subject excursion, as factually described herein; (b) failing to warn of material risks concerning the subject excursion, as factually described herein; and/or (c) contracting with ROYAL in Florida which led to the misrepresentation torts alleged herein.

**CHUKKA's contract with ROYAL meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9)**

11. At all times material hereto, CHUKKA entered into a contract with ROYAL concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby CHUKKA agreed to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between ROYAL and CHUKKA meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

**CHUKKA's continuous and systematic general business contacts with Florida satisfies a finding of general jurisdiction under Florida Statute § 48.193(2)**

12. At all times material hereto, CHUKKA has engaged in substantial and not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of its revenue from its business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts and/or supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; (j) participating in cruise industry trade shows in

Miami (e.g., Sea trade); and/or (k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida.

13. At all times material hereto, CHUKKA has been in the business of providing excursions to cruise line passengers in U.S. Virgin Islands through Florida-based cruise lines, including ROYAL, Celebrity, NCL, Carnival and/or MSC. In entering into contracts with these Florida-based cruise lines, CHUKKA agreed to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, CHUKKA receives the benefit of the cruise lines' advertising and promotional efforts, including the subject excursion which forms the basis of this lawsuit.

14. At all times material hereto, CHUKKA's arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Herein, unlike *Daimler*, Plaintiff is suing a Florida-based cruise line (ROYAL) for injuries sustained while participating in an excursion operated by agents of the cruise line (CHUKKA) – agents set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, ROYAL is "at home" in this jurisdiction because ROYAL maintains its principal place of business in Florida. Thus, under *Daimler*, CHUKKA is also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

**CHUKKA's activities in Florida satisfy**
**a finding of jurisdiction under Fed. R. Civ. P. 4(k)**

15. At all times material hereto, and in the alternative, CHUKKA is also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) CHUKKA is not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over CHUKKA is consistent with the United States Constitution and laws based on CHUKKA's minimum contacts with the United States as a

whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. These minimum contacts are set forth in the above allegations, and include, but are not limited to, CHUKKA's location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

**FACTS COMMON TO ALL COUNTS**

16. At all times material hereto, ROYAL owned, operated, managed, maintained and/or controlled the subject cruise vessel, *Rhapsody of the Seas*, which at all times material ROYAL operated in navigable waters.

17. At all times material, Plaintiff was a lawful and paying passenger aboard the subject cruise vessel.

18. At all times material, CHUKKA owned and/or operated the subject excursion, which was entitled "Caribbean 'FastCat' 2-Island Snorkeling Safari and Beach Getaway" (hereinafter referred to as the "subject excursion" and/or the "tour"); and the subject excursion was offered, arranged for, sponsored, recommended, marketed, sold, co-owned, co-operated and/or managed by ROYAL.

19. On July 7, 2025, Plaintiff participated in the subject excursion, and as a result thereof, suffered injuries that include, but are not limited to: severe spinal burst fracture at T11-12, resulting in a need for surgery/ies; and this incident and resulting injuries caused Plaintiff to develop spinal complications including, but not limited to, the onset of Kummell's disease.

**ROYAL's Promotional Material and Statements Concerning Shore Excursions Generally and the Subject Excursion Specifically**

20. First, after booking the subject cruise, ROYAL sent Plaintiff promotional material, which provided information and descriptions of shore excursions, including the subject excursion.

21. Second, after booking the cruise, Plaintiff reviewed ROYAL's website on which ROYAL offered, marketed, promoted and advertised the shore excursions it offered for the subject cruise, including the subject excursion (which ROYAL did on CHUKKA's behalf, and without ROYAL disclosing CHUKKA's involvement in the subject excursion).

22. For the subject excursion, ROYAL posted the following on its website on or about May 14, 2025, which is the date that Plaintiff reviewed ROYAL's website and made the decision to purchase and participate in the subject excursion:

# Caribbean 'FastCat' 2-Island Snorkeling Safari and Beach Getaway Charlotte Amalie, St. Thomas

## Overview

Escape away to a slice of tropical paradise with this exhilarating St. Thomas shore excursion, as you cruise to an idyllic island for some guided snorkeling, followed by a bit of relaxation at a secluded beach.

## Highlights

- Hop aboard a spacious and fully shaded catamaran and glide across the Caribbean Sea on your way to Buck Island, a National Wildlife Refuge and well-known sanctuary for coral reefs and turtles.
- Here, guided by your friendly crew, grab your snorkeling equipment and dive beneath the crystal-clear waters, as you snorkel among colorful coral formations, tropical fish, and luck permitting, the occasional curious turtle.
- After, continue to a secluded Caribbean beach, accessible only by boat, where you can enjoy some free time to lounge on the sand, soak up the tropical sun and indulge in a tropical drink.
- Once you bid farewell to the beach, the fun continues back on the boat, as you groove to lively music and sip on a delicious rum punch – the perfect conclusion to your Snorkeling Safari and Beach Getaway excursion.

Located here: https://www.royalcaribbean.com/shore-excursions/stt/charlotte-amalie-st-thomas/caribbean-fastcat-2-island-snorkeling-safari-and-beach-getaway/st71 (last accessed April 13, 2026).

23. Notably, ROYAL represented the following about the subject excursion:

a. "Hop aboard a spacious and fully shaded catamaran and glide across the Caribbean Sea on your way to Buck Island…" (underline emphasis added)

24. Based upon ROYAL's website representations about the subject excursion, which Plaintiff reviewed on or about May 14, 2025, prior to purchasing the excursion and justifiably relying upon same, given ROYAL's promotion, Plaintiff decided to purchase the excursion and participate in same during the subject cruise.

25. Notably, on or about May 14, 2025, ROYAL did not warn Plaintiff about the following concerning the subject excursion:

a. Participants on the subject tour, including Plaintiff, would experience dangerous conditions such as:

   i. the tour operator would operate the vessel unreasonably fast for the given sea conditions and the tour vessel would thereby not "glide across the Caribbean Sea";

   ii. given the natural sea and wind conditions for the intended route, the tour vessel would lift up and slam forcibly down on the sea, such that the tour vessel would thereby not "glide across the Caribbean Sea";

   iii. given the natural sea and wind conditions for the intended route, shore excursion participants were, or were likely to be, ejected from their seats, , such that the tour vessel would thereby not "glide across the Caribbean Sea";

b. The subject tour was actually owned and/or operated in part by CHUKKA, instead of exclusively by ROYAL.

26. Had ROYAL accurately represented the subject excursion to accurately state the dangerous conditions associated with the subject excursion (*see* paragraph 38 below), Plaintiff would have decided to not participate in the subject excursion, and she would not have been injured.

27. Both ROYAL and CHUKKA are responsible for the contents of the shore excursion description excerpted above. This is because, before advertising and marketing the subject shore

excursion to ROYAL's passengers on ROYAL's website, ROYAL requires that CHUKKA provide ROYAL with a draft description of the subject excursion, and ROYAL uses the written feedback it gets from CHUKKA to describe the subject shore excursion to ROYAL's passengers. For example, CHUKKA would have used the verb "glide" when explaining its intended voyage, and before publishing that description of the voyage on its website, ROYAL would have verified the accuracy of that verb, for example, by having a ROYAL shore excursion representative take the tour and report the accuracy of the description to ROYAL. Thus, both ROYAL and CHUKKA are responsible for the contents of the subject shore excursion description excerpted above; which ROYAL broadcasted and published on its website from ROYAL's servers located at ROYAL's principal place of business in Miami, Florida.

28. Third, ROYAL also had promotional materials at its shore excursion desk aboard the cruise ship and/or other areas of the ship with information and descriptions of shore excursions, including the subject excursion. Tickets for shore excursions, including the subject excursion, were also available for sale on ROYAL's shore excursion desk aboard the cruise ship.

29. The information and/or material ROYAL made available and/or distributed to passengers concerning shore excursions, including the Plaintiff and Plaintiff concerning the subject excursion, was based on the description and/or information provided to ROYAL by CHUKKA and/or by ROYAL's inspections and/or approval of the subject excursion and/or of CHUKKA, as further described below. Accordingly, Defendants undertook a duty to accurately advise passengers, including Plaintiff, concerning the subject excursion in order to obtain a profit for Defendants, and Defendants were required to execute that duty utilizing reasonable care under the circumstances.

**Subject Tour Incident**

30. Relying on the safety and reputability of ROYAL, as well as ROYAL's representations regarding its shore excursions, including the subject excursion, Plaintiff decided to participate in the subject excursion, and purchased tickets for the subject excursion directly from ROYAL on or about May 14, 2025.

31. Plaintiff obtained all of the information regarding the subject excursion from ROYAL's website and shipboard agents, and made all of the reservation arrangements for the subject excursion exclusively with ROYAL. In turn, ROYAL received a portion of Plaintiff's ticket price for the subject excursion.

32. Plaintiff reviewed ROYAL's information and/or material concerning the subject excursion and relied upon ROYAL's representations exclusively and to Plaintiff's detriment in deciding to purchase the subject excursion from ROYAL and to participate in same during the cruise aboard the *Rhapsody of the Seas*.

33. Based upon ROYAL's representations, information and/or material concerning the subject excursion, Plaintiff reasonably understood that ROYAL conducted regular inspections of the catamaran tour and operator's skill in operating the catamaran, to ensure that same was reasonably safe, and Plaintiff relied upon such understanding to her detriment in deciding to purchase the subject excursion from ROYAL and to participate in same during Plaintiff's cruise aboard the *Rhapsody of the Seas*.

34. On or about July 7, 2025, as part of the cruise aboard the *Rhapsody of the Seas*, Plaintiff participated in the subject excursion in the U.S. Virgin Islands.

35. This excursion was arranged for, sponsored, recommended, operated, marketed and/or sold by ROYAL as part of the cruise aboard the *Rhapsody of the Seas*. Unbeknownst to Plaintiff at the time, the excursion was owned, operated and/or co-operated by CHUKKA.

36. The subject excursion consisted of a boat ride on a catamaran that was to take Plaintiff to a beach area.

37. Plaintiff became injured on the subject excursion when CHUKKA, while operating the catamaran at unreasonable speed in rough seas, caused the catamaran to meet an oncoming wave head on, which caused the catamaran to violently crash into the wave and Plaintiff was ejected from her seated position and slammed back down. This incident directly caused Plaintiff to suffer injuries that include, but are not limited to: severe spinal burst fracture at T11-12, resulting in a need for surgery/ies; and this incident and resulting injuries caused Plaintiff to develop spinal complications including, but not limited to, the onset of Kummell's disease.

38. The dangerous conditions which caused this incident and Plaintiff's resulting injuries include, but are not limited to:

a. ROYAL's conduct:

    i. Failed to reasonably warn Plaintiff that ROYAL did not operate the excursion but that another unknown entity (CHUKKA) did; and had Plaintiff known this, she would not have participated in the excursion;

    ii. Failed to reasonably warn Plaintiff of the prior incidents involving CHUKKA outlined herein; and had Plaintiff known this, she would not have participated in the excursion;

    iii. Negligently selected, hired and/or retained CHUKKA to provide shore excursions to its passengers, including Plaintiff, given the prior incidents outlined herein that ROYAL knew or should have known about; and/or

    iv. Misrepresented the dangerous conditions associated with the subject excursion and/or failed to reasonably warn of same.

b. CHUKKA's conduct:

    i. Created an unreasonably dangerous vessel environment by, *inter alia*, a) operating the vessel too fast for the given sea and wind conditions; b) failing to properly navigate oncoming waves and/or foreseeable sea/wind conditions; and c) failing to reasonably secure and protect passengers in the vessel;

ii. Operated the vessel at excessive or unsafe speeds given the circumstances or conditions of a) wave height; b) sea volatility; and c) wind conditions, which prevented the vessel operator from providing a safe response to oncoming waves and sea conditions;

iii. Failed to reduce speed in rough seas, which prevented a safe response to oncoming waves and sea conditions;

iv. Took the wave(s) head-on, instead of at an angle;

v. Failed to "quarter" waves or reasonably adjust course;

vi. Failed to anticipate the wave's impact;

vii. Failed to maintain a proper lookout;

viii. Failed to appreciate the water conditions properly; including the reasonable anticipation of wave sets or sea swells; especially considering the elevated wave height, short wave intervals and swell/wind chop combination on the day of the incident;[1]

ix. Failed to reasonably appreciate the effect of the sea and wind conditions on the vessel, and foreseeability of injury, given that rough seas inherently create a) vertical acceleration; and b) slamming forces; which, given the circumstances, required heightened precautions by the vessel operator vis-à-vis its passengers to prevent injury;

x. Failed to warn passengers, including Plaintiff, of the dangerous conditions, including a) rough seas and wind; b) potential for impact/vessel slamming; c) instructions to brace for impact or hold on;

xi. Failed to warn passengers, including Plaintiff, of seats on the vessel that were not safe to sit in as opposed to seats that were safe, or safer, to sit in, given the circumstances of the voyage; including but not limited to reasonably warning and/or prohibiting Plaintiff from sitting at a seat at the front of the vessel, especially given the speed at which the vessel was being operated and the sea/wind conditions at the time of the voyage;

xii. Failed to provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with

---

[1] Prior to picking Plaintiff up on the catamaran, CHUKKA wrestled the sea/wave and wind conditions bringing the vessel to port, as CHUKKA had to make approximately five attempts to bring the vessel to port given the sea and wind conditions; and given these facts, CHUKKA knew or should have known of the dangerous sea and wind conditions at the time of Plaintiff's incident, which occurred less than an hour thereafter. Plaintiff did not know same or the extent of same as a layman with no nautical knowledge.

adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

xiii. Failed to suspend or modify the voyage, such as slowing down, changing the route or cancel/delay the subject excursion; and/or

xiv. Failing to provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warnings.

39. The combination of the above outlined dangerous conditions, including excessive speed, improper navigation into oncoming waves, and failure to secure and warn passengers, caused the tour vessel to raise at the bow (where Plaintiff was seated), generating forces sufficient to eject Plaintiff from her seat, and then slam violently into the sea. The force of the vessel's impact with the sea created a sudden vertical compression event consistent with high-energy trauma, directly causing Plaintiff's spinal burst fracture injury.

**ROYAL's Notice of the Dangerous Excursion and/or Incompetent Providers**

40. The subject excursion was not competently operated by properly trained and/or supervised persons, and/or it was unreasonably hazardous for reasons that include, but are not limited to, the dangerous conditions alleged at paragraph 38 above.

41. Before the subject incident, ROYAL and CHUKKA knew or should have known that the subject excursion was dangerous and/or not suitable for passengers due to other passengers being similarly injured as a result of the same or similar dangerous conditions alleged herein on the same or similar excursion(s) provided by CHUKKA, including, but not limited to, the following:

a. *Gelfand v. Chukka Virgin Islands Operating Co. LLP, et. al.*, Case No. 25-cv-21349 (S.D. Fla. 2025) – in a January 31, 2024 incident, CHUKKA operated one of their tour vessels in a careless way given the sea conditions and circumstances at that time, in that CHUKKA's vessel operator made an abrupt right turn, and CHUKKA's tour vessel crashed into a cruise ship dock, causing shore excursion participants to be thrown from their seats. This prior incident is similar to Plaintiff's incident in that CHUKKA's vessel operator operated the tour vessel in a careless way given the sea conditions and circumstances at that time and caused a shore excursion participant to be thrown from their seat.

i. ROYAL knew or should have known of this prior incident because when a shore excursion provider, like CHUKKA, contracts with ROYAL, ROYAL requires the shore excursion provider to inform ROYAL of any and all prior incidents involving alleged injury to cruise ship tour participants, including those incidents that involve other cruise lines' passengers, as a prerequisite to ROYAL agreeing to market the excursion provider's tour to ROYAL's passengers; and ROYAL requires the tour provider, like CHUKKA here, to inform ROYAL of alleged incidents and claims involving passengers on a rolling basis as they occur. ROYAL also undertakes a duty, before entering into or renewing their contract with the shore excursion provider, to research and investigate whether the shore excursion provider has had any prior incidents; for example, by looking online for filed lawsuits against CHUKKA. Had ROYAL reasonably done that investigation here, ROYAL knew or should have known of this prior incident. Further, this incident was one of at least three (3) reported claims, in that it was one incident that damaged a shore excursion vessel and three different plaintiffs allegedly suffered injuries and sued as a result.

b. *Maldonado v. Chukka Virgin Islands Operating Co. LLP, et. al.*, Case No. 25-cv-21498 (S.D. Fla. 2025) – in a January 31, 2024 incident, CHUKKA operated one of their tour vessels in the U.S. Virgin Islands in a careless way given the sea conditions and circumstances at that time, in that CHUKKA's vessel operator made an abrupt right turn, and CHUKKA's vessel crashed into a cruise ship dock, causing shore excursion participants to be thrown from their seats, including the plaintiff in this case as she sat at the vessel's bow. This prior incident is similar to Plaintiff's incident in that CHUKKA's vessel operator operated the tour vessel in a careless way given the sea conditions and circumstances at that time and caused a shore excursion participant to be thrown from their seat.

i. ROYAL knew or should have known of this prior incident because when a shore excursion provider, like CHUKKA, contracts with ROYAL, ROYAL requires the shore excursion provider to inform ROYAL of any and all prior incidents involving alleged injury to cruise ship tour participants, including those incidents that involve other cruise lines' passengers as a prerequisite to ROYAL agreeing to market the excursion provider's tour to ROYAL's passengers; and ROYAL requires the tour provider, like CHUKKA here, to inform ROYAL of alleged incidents and claims involving passengers on a rolling basis as they occur. ROYAL also undertakes a duty, before entering into or renewing their contract with the shore excursion provider, to research and investigate whether the shore excursion provider has had any prior incidents; for example, by looking online for filed lawsuits against CHUKKA. Had ROYAL reasonably done that investigation here, ROYAL knew or should have known of this prior incident. Further, this incident was one of at least three (3) reported claims, in that it was one

incident that damaged a shore excursion vessel and three different plaintiffs allegedly suffered injuries and sued as a result.

c. *Hookway v. Chukka Virgin Islands Operating Co. LLP, et. al.*, Case No. 25-cv-21497 (S.D. Fla. 2025) – in a January 31, 2024 incident, CHUKKA operated one of their tour vessels in the U.S. Virgin Islands in a careless way given the sea conditions and circumstances, in that CHUKKA's vessel operator made an abrupt right turn, and CHUKKA's vessel crashed into a cruise ship dock, causing shore excursion participants to be thrown from their seats, including the plaintiff in this case as she sat at the vessel's bow. This prior incident is similar to Plaintiff's incident in that CHUKKA's vessel operator operated the tour vessel in a careless way given the sea conditions and circumstances and caused a shore excursion participant to be thrown from their seat.

    i. ROYAL knew or should have known of this prior incident because when a shore excursion provider, like CHUKKA, contracts with ROYAL, ROYAL requires the shore excursion provider to inform ROYAL of any and all prior incidents involving alleged injury to cruise ship tour participants, including those incidents that involve other cruise lines' passengers as a prerequisite to ROYAL agreeing to market the excursion provider's tour to ROYAL's passengers; and ROYAL requires the tour provider, like CHUKKA here, to inform ROYAL of alleged incidents and claims involving passengers on a rolling basis as they occur. ROYAL also undertakes a duty, before entering into or renewing their contract with the shore excursion provider, to research and investigate whether the shore excursion provider has had any prior incidents; for example, by looking online for filed lawsuits against CHUKKA. Had ROYAL reasonably done that investigation here, ROYAL knew or should have known of this prior incident. Further, this incident was one of at least three (3) reported claims, in that it was one incident that damaged a shore excursion vessel and three different plaintiffs allegedly suffered injuries and sued as a result.

d. *Walker v. Chukka Virgin Islands Operating Co. LLP, et. al.*, Case No. 26-cv-20951 (S.D. Fla. 2026) – in a February 25, 2025 incident, CHUKKA operated one of their vessels in the U.S. Virgin Islands a careless way given the sea conditions and circumstances, in that CHUKKA operated its vessel at high and unsafe speeds for the given sea conditions, causing the vessel to lift out of the water and slam back down violently, which action threw the plaintiff out of her seat and onto the floor, causing her to sustain injuries. This prior incident is similar to Plaintiff's incident in that CHUKKA's vessel operator operated the vessel in a careless way given the sea conditions and circumstances and caused a shore excursion participant to be thrown from their seat.

    i. ROYAL knew or should have known of this prior incident because when a shore excursion provider, like CHUKKA, contracts with ROYAL, ROYAL requires the shore excursion provider to inform ROYAL of any and all prior incidents involving alleged injury to cruise

ship tour participants, including those incidents that involve other cruise lines' passengers as a prerequisite to ROYAL agreeing to market the excursion provider's tour to ROYAL's passengers; and ROYAL requires the tour provider, like CHUKKA here, to inform ROYAL of alleged incidents and claims involving passengers on a rolling basis as they occur. ROYAL also undertakes a duty, before entering into or renewing their contract with the shore excursion provider, to research and investigate whether the shore excursion provider has had any prior incidents; for example, by looking online for filed lawsuits against CHUKKA. Had ROYAL reasonably done that investigation here, ROYAL knew or should have known of this prior incident.

42. CHUKKA knew or should have known of the dangerous conditions outlined above because CHUKKA created those dangerous conditions (and therefore had actual knowledge), CHUKKA was involved in the prior incidents outlined above (and therefore had actual knowledge), and:

a. At the start of the subject tour voyage, Plaintiff was seated at the front of the vessel, and she was seated at that location for at least 10 minutes before her incident. During this time, CHUKKA's crewmembers were about the vessel and observed Plaintiff seated at the front of the vessel, before the vessel was in transit and while the vessel was underway. Given that Plaintiff was seated at the front of the vessel for this duration of time, CHUKKA had a sufficient amount of time to observe Plaintiff in danger when the vessel got underway, and prevent the circumstances of her incident.

b. Within seconds after Plaintiff's incident, the vessel operator stated to passengers over the vessel's intercom a statement consistent with: "I know you guys think I was going fast, but it is better to go fast over the big waves than to go slow." This statement by CHUKKA's vessel operator establishes that the operator knew: i) he was operating the vessel at a fast speed; ii) the waves at which he was operating the vessel at a higher rate of speed were big waves; and iii) the combination of travel speed and wave size would make the passengers uncomfortable and/or separated from their seats.

43. In addition, the incompetence and/or hazardous conditions of the subject tour should have been discovered by ROYAL and CHUKKA before Plaintiff's incident had ROYAL and CHUKKA properly evaluated the subject tour, natural sea, wave and wind conditions for the U.S. Virgin Islands and reviewed prior incidents, to ensure it was reasonably safe for ROYAL's cruise passengers, before repeatedly recommending the excursion to its passengers, including Plaintiff,

to the exclusion of other excursions not offered by ROYAL. For example, prior to the subject incident, and pursuant to ROYAL's own policies and procedures to conduct an initial inspection of the subject excursion's operations and/or yearly inspections of same, ROYAL learned or would have learned of the dangerous conditions outlined at paragraph 38 above.

44. Specifically, before offering excursions to passengers, the excursions and/or the excursion operators are subject to ROYAL's approval pursuant to policies and procedures promulgated by ROYAL. This is a duty undertaken by ROYAL, in part, so that it may make the aforementioned representations concerning the subject tour to its passengers in an effort to generate a profit for ROYAL. Accordingly, ROYAL is required to execute this duty with reasonable care under the circumstances.

45. During the excursion approval process, ROYAL is supposed to verify whether the operator is qualified and competent to operate the subject tour and provide the tour; and whether the subject tour is safe. This investigation includes ROYAL understanding the route the tour vessel is to travel during the subject tour, the vessel operator's credentials, the safety instructions provided to tour participants, the vessel(s) used for the tour, including any safety features provided, and the natural sea/wave and wind conditions of the waters and route used for the tour. Had ROYAL done this inspection and initial safety tour properly, ROYAL would have learned that, *inter alia,* the vessel operator did not operate the tour vessel safely given the natural sea/wave and wind conditions, the route and vessel used for the tour were not reasonably safe, there was an insufficient amount of safety features provided for the tour, and tour participants were at risk of being ejected from their seats during the tour and thereby susceptible to injury, given the above described dangers, such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury.

46. The excursion operators also provide ROYAL details pertaining to the excursion, including, but not limited to, the location, a tour description, restrictions, and/or participation levels for the excursion; and in turn, ROYAL independently investigates and verifies the tour and its conditions. Had ROYAL reasonably investigated, it would have learned that while traveling aboard the tour vessel, the vessel would not "glide across the Caribbean Sea" given the dangerous conditions outlined at paragraph 38 above.

47. Part of ROYAL's approval process, initial and yearly, also entails ROYAL's representatives personally inspecting and participating in the excursion being proposed, including the vessel ride and related operations, under the same or similar conditions to which the passenger participants are to be exposed; such as natural sea, wave and wind conditions to which the tour vessel is exposed when taking the route from the passenger pick up location to the beach point. ROYAL did this inspection in the year before Plaintiff's incident, as part of ROYAL's policy to do so before promoting and selling same to its passengers. When ROYAL's representatives inspected the excursion site and took the vessel ride, ROYAL learned or should have learned that i) the vessel operator operated the vessel unreasonably fast for the given sea, wave and wind conditions; ii) the given natural sea and wind conditions caused the shore excursion vessel to lift up and forcibly slam down on the sea; iii) given the natural sea and wind conditions, shore excursion participants were, or could have been, ejected from their seats; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury.

48. Accordingly, ROYAL taking the subject excursion under the same or similar circumstances as the subject incident did or should have revealed to ROYAL that the subject excursion was dangerous and/or not suitable for passengers for the reasons Plaintiff alleges at paragraph 38 herein.

49. Moreover, once an excursion is approved and accepted by ROYAL, ROYAL sends excursion operators, like CHUKKA here, standards, policies, and/or procedures that ROYAL requires the excursion operators must adhere to while ROYAL is offering their excursions to its passengers. Additionally, the excursion operators are subject to yearly inspections and/or approval by ROYAL, where ROYAL is supposed to conduct site inspections of the excursion as well as the vessels used for operations of the excursion. The yearly inspections and/or approval process also requires excursion operators to submit yearly "bids" and/or reports to ROYAL, wherein the operators disclose the details of bodily injury incidents that occurred in the past twenty (20) years during the operator's shore excursion involving cruise line passengers (among other information), at all sites at which that operator provides their excursions. Thus, before Plaintiff's incident, ROYAL was or should have been on notice that cruise ship passengers were injured participating in vessel tour excursions – including those in U.S. Virgin Islands – operated by CHUKKA.

**COUNT I – MISLEADING ADVERTISING IN VIOLATION OF FLORIDA STATUTE § 817.41 AGAINST DEFENDANTS**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges.

50. On or about May 14, 2025, Plaintiff reviewed ROYAL's website, including the information set forth in paragraphs 20-23 above.

51. At all times material hereto, ROYAL's promotional material, including its website and/or brochure referenced above, which Plaintiff reviewed, contained the statements and descriptions set forth in paragraphs 20-23 above.

52. At all times material hereto, Defendants' promotional material, including ROYAL's website and/or brochure referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, including:

a. Misrepresenting that if Plaintiff took the tour, she would "glide across the Caribbean Sea"; when in reality, the vessel operator operated the vessel unreasonably fast for the given sea, wave and wind conditions; the given natural sea and wind conditions caused the shore excursion vessel to lift up and forcibly slam down on the sea; and given the natural sea and wind conditions, shore excursion participants were, or could have been, ejected from their seats; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury.

53. Pursuant to Florida Statute § 817.41(4), ROYAL as well as CHUKKA are responsible for the foregoing false and/or misleading advertisements because Defendants were named in and/or obtained the benefits of the statements and/or advertisements which ROYAL distributed from its headquarters in Miami, Florida, U.S.A.

54. At all times material hereto, the foregoing statements ROYAL made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading. This knowledge was or should have been acquired through: (a) ROYAL's initial approval process of CHUKKA and/or the excursion, including, but not limited to, having ROYAL's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; (b) ROYAL's yearly inspections of CHUKKA and/or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; and/or (c) prior incidents involving cruise passengers who became injured while participating in CHUKKA's U.S. Virgin Island tours, as alleged at paragraphs 41.

55. Similarly, and at all times material hereto, the foregoing statements ROYAL and/or CHUKKA made and/or disseminated on CHUKKA's behalf were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading based upon the prior incidents alleged at paragraph 41 and CHUKKA's conduct alleged at paragraph 42.

56. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion), as evident by the tour description excerpted at paragraph 22.

57. At all times material hereto, Plaintiff justifiably relied on the representations made by ROYAL when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion. Plaintiff's reliance on ROYAL's representations were justified considering that Plaintiff was a resident of Arizona, and ROYAL was in the business of offering shore excursions, including those in the U.S. Virgin Islands, to thousands of passengers daily from which it earned tens of millions of dollars a year (or more). As a result, ROYAL was in a much stronger position to identify the potential dangers and/or inequities that passengers (like Plaintiff) will encounter when participating in excursions and/or when involved in incident(s) and/or dispute(s) with excursion providers. Plaintiff therefore justifiably relied on ROYAL to accurately advise her concerning the excursion providers and/or the subject excursion. Plaintiff's reliance on ROYAL's representations was also justified because ROYAL made all arrangements for the subject excursion; ROYAL marketed the subject excursion using its website and company logo; ROYAL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through ROYAL; and/or Plaintiff's exclusive contacts concerning the subject excursion was with ROYAL and/or ROYAL's onboard excursion desk until the point that Plaintiff actually participated in the subject excursion. Further, had ROYAL not made the foregoing representations, Plaintiff would have made a different decision, such as not participating in the subject excursion.

58. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, loss of function, permanent disability,

incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands the recovery from Defendants of all damages recoverable under the law and demands a trial by jury.

**COUNT II – NEGLIGENT MISREPRESENTATION AGAINST DEFENDATS**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

59. On or about May 14, 2025, Plaintiff reviewed ROYAL's website, including the information set forth in paragraphs 20-23 above.

60. At all times material hereto, Defendants' promotional material, including ROYAL's website and/or brochure referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, including:

a. Misrepresenting that if Plaintiff took the tour, she would "glide across the Caribbean Sea"; when in reality, the vessel operator operated the vessel unreasonably fast for the given sea, wave and wind conditions; the given natural sea and wind conditions caused the shore excursion vessel to lift up and forcibly slam down on the sea; and given the natural sea and wind conditions, shore excursion participants were, or could have been, ejected from their seats; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury.

61. ROYAL as well as CHUKKA are responsible for the foregoing false and/or misleading advertisements because Defendants were named in and/or obtained the benefits of the statements and/or advertisements which ROYAL distributed from its headquarters in Miami, Florida, U.S.A.

62. At all times material hereto, the foregoing statements ROYAL made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading. This knowledge was or should have been acquired through: (a) ROYAL's initial approval process of CHUKKA and/or the excursion,

including, but not limited to, having ROYAL's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; (b) ROYAL's yearly inspections of CHUKKA and/or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; and/or (c) prior incidents involving cruise passengers who became injured while participating in CHUKKA's U.S. Virgin Island tours, as alleged at paragraphs 41.

63. Similarly, and at all times material hereto, the foregoing statements ROYAL and/or CHUKKA made and/or disseminated on CHUKKA's behalf were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading based upon the prior incidents alleged at paragraph 41 and CHUKKA's conduct alleged at paragraph 42.

64. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion), as evident by the tour description excerpted at paragraph 22.

65. At all times material hereto, Plaintiff justifiably relied on the representations made by ROYAL when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion. Plaintiff's reliance on ROYAL's representations were justified considering that Plaintiff was a resident of Arizona, and ROYAL was in the business of offering shore excursions, including those in the U.S. Virgin Islands, to thousands of passengers daily from which it earned tens of millions of dollars a year (or more). As a result, ROYAL was in a much stronger position to identify the potential dangers and/or inequities that passengers (like Plaintiff) will encounter when participating in excursions and/or when involved in incident(s) and/or dispute(s) with excursion providers. Plaintiff therefore justifiably relied on ROYAL to accurately advise her

concerning the excursion providers and/or the subject excursion. Plaintiff's reliance on ROYAL's representations was also justified because ROYAL made all arrangements for the subject excursion; ROYAL marketed the subject excursion using its company logo; ROYAL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through ROYAL; and/or Plaintiff's exclusive contacts concerning the subject excursion was with ROYAL and/or ROYAL's onboard excursion desk until the point that Plaintiff actually participated in the subject excursion. Further, had ROYAL not made the foregoing representations, Plaintiff would have made a different decision, such as not participating in the subject excursion.

66. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

**COUNT III – NEGLIGENT SELECTION AND/OR RETENTION AGAINST ROYAL**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

67. At all times material hereto, it was the duty of ROYAL to provide Plaintiff with reasonable care under the circumstances.

68. At all times material hereto, ROYAL had a duty to select and/or hire competent and/or fit excursion operators.

69. At all times material hereto, as part of its duty to select and/or hire competent and/or fit excursion operators, it was incumbent upon ROYAL to diligently inquire into CHUKKA's

identity, competency and fitness to operate tour vessels, including that of their employees and/or subcontractors.

70. On or about July 7, 2025, ROYAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances by selecting and/or retaining CHUKKA to provide Plaintiff the subject tour, as CHUKKA was incompetent and/or unfit based on the following:

a. The failure of CHUKKA to provide a reasonably safe excursion given the facts alleged at paragraphs 34-39;

b. CHUKKA operating the tour vessel unreasonably fast for the given sea, wave and wind conditions; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

c. CHUKKA operating the tour vessel given the natural sea and wind conditions at that time which caused the shore excursion vessel to lift up and forcibly slam down on the sea; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

d. CHUKKA failing to properly navigate oncoming waves and/or foreseeable sea/wind conditions;

e. CHUKKA failing to reasonably secure and protect passengers in the vessel;

f. CHUKKA failing to reasonably reduce speed of the tour vessel in rough seas, which prevented a safe response to oncoming waves and sea conditions;

g. CHUKKA operating the tour vessel into wave(s) head-on, instead of at an angle;

h. CHUKKA's failure to maintain a proper lookout;

i. CHUKKA's failure to reasonably appreciate the effect of the sea and wind conditions on the tour vessel, and foreseeability of passenger injury, given that rough seas inherently create i) vertical acceleration; and ii) slamming forces; which, given the circumstances, required heightened precautions by the vessel operator vis-à-vis its passengers;

j. CHUKKA's failure to warn passengers of the dangerous conditions, including i) rough seas and wind; ii) potential for impact/vessel slamming; iii) instructions to brace for impact or hold on;

k. CHUKKA's failure to warn passengers of seats on the vessel that were not safe to sit in as opposed to seats that were safe, or safer, to sit in, given the circumstances

of the voyage; including but not limited to reasonably warning and/or prohibiting passengers from sitting at a seat at the front of the vessel, especially given the speed at which the vessel was being operated and the natural sea/wind conditions in the U.S. Virgin Islands;

l. CHUKKA's failure to provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

m. CHUKKA's failure to provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warnings.

71. ROYAL knew or should have known of CHUKKA's incompetence and/or unfitness based upon: (a) ROYAL's initial approval process of CHUKKA and/or the excursion, including, but not limited to, having ROYAL's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; (b) ROYAL's yearly inspections of CHUKKA and/or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 44-49; and/or (c) prior incidents involving cruise passengers who became injured while participating in CHUKKA's U.S. Virgin Island tours, as alleged at paragraphs 41.

72. As a direct and proximate result of CHUKKA's incompetence and/or unfitness, Plaintiff became injured as a direct result of the dangerous conditions described above.

73. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

## COUNT IV – NEGLIGENT FAILURE TO WARN AGAINST ROYAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

74. At all times material hereto, it was the duty of ROYAL to provide Plaintiff with reasonable care under the circumstances.

75. At all times material hereto, it was the duty of ROYAL to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to ROYAL in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

76. On or about July 7, 2025, Plaintiff was participating in the subject excursion, which ROYAL invited and reasonably expected Plaintiff to participate in since ROYAL sold her a ticket for the excursion.

77. On or about July 7, 2025, ROYAL and/or its agents, servants, joint venturers and/or employees breached its duty to warn Plaintiff through the following acts and/or omissions:

a. Failure to adequately warn Plaintiff of the dangers associated with participating in the subject excursion, as outlined at paragraph 38;

b. Failure to adequately warn Plaintiff that if Plaintiff took the tour, she would not "glide across the Caribbean Sea"; as in reality, the vessel operator operated the vessel unreasonably fast for the given sea, wave and wind conditions; the given natural sea and wind conditions caused the shore excursion vessel to lift up and forcibly slam down on the sea; and given the natural sea and wind conditions, shore excursion participants were, or could have been, ejected from their seats; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

c. Failure to adequately warn Plaintiff that ROYAL did not fully own and operate the subject tour; but in reality, CHUKKA owned and operated, in full or in part, the subject tour;

d. Failure to adequately warn Plaintiff that CHUKKA would operate the tour vessel unreasonably fast for the given sea, wave and wind conditions; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

e. Failure to adequately warn Plaintiff that CHUKKA would fail to properly navigate oncoming waves and/or foreseeable sea/wind conditions;

f. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably secure and protect passengers in the vessel;

g. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably reduce speed of the tour vessel in rough seas, which prevented a safe response to oncoming waves and sea conditions;

h. Failure to adequately warn Plaintiff that CHUKKA would operate the tour vessel into wave(s) head-on, instead of at an angle;

i. Failure to adequately warn Plaintiff that CHUKKA would fail to maintain a proper lookout;

j. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably appreciate the effect of the sea and wind conditions on the tour vessel, and foreseeability of passenger injury, given that rough seas inherently create i) vertical acceleration; and ii) slamming forces; which, given the circumstances, required heightened precautions by the vessel operator vis-à-vis its passengers;

k. Failure to adequately warn Plaintiff that CHUKKA would not provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

l. Failure to adequately warn Plaintiff that CHUKKA would not provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warning.

78. The above acts and/or omissions caused and/or contributed to Plaintiff's injuries because Plaintiff would not have purchased tickets for and/or participated in the subject excursion had ROYAL and/or its agents, servants, and/or employees adequately warned and/or communicated the foregoing to Plaintiff.

79. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

**COUNT V – GENERAL NEGLIGENCE AGAINST ROYAL**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

80. At all times material hereto, it was the duty of ROYAL to provide Plaintiff with reasonable or ordinary care under the circumstances.

81. On or about July 7, 2025, ROYAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff and Plaintiff with reasonable or ordinary care under the circumstances, based on the following acts and/or omissions:

a. The failure of ROYAL and CHUKKA to provide a reasonably safe excursion, as factually alleged at paragraph 34-38, in that ROYAL sold the excursion after ROYAL inspected CHUKKA's tour operation and made material misrepresentations about same to induce Plaintiff's purchase and participation;

b. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would operate the tour vessel safely, and not unreasonably fast for the given sea, wave and wind conditions;

c. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would properly navigate oncoming waves and/or foreseeable sea/wind conditions;

d. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would reasonably secure and protect passengers in the vessel, such as instructing them not to sit at the vessel's bow/front while the vessel was in transit;

e. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would reasonably reduce speed of the tour vessel in rough seas;

f. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would not operate the tour vessel into wave(s) head-on, and instead, at an angle;

g. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would maintain a proper lookout;

h. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

i. ROYAL's failure to reasonably ensure, after inspecting CHUKKA's tour operations, that CHUKKA would provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warning.

82. All or some of the above acts and/or omissions by ROYAL and/or its agents, servants, and/or employees, caused and/or contributed to Plaintiff's injuries while participating in the subject excursion.

83. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

**COUNT VI – GENERAL NEGLIGENCE AGAINST CHUKKA**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

84. At all times material hereto, CHUKKA co-owned and/or co-operated the subject excursion.

85. At all times material hereto, it was the duty of CHUKKA to provide Plaintiff with reasonable care under the circumstances.

86. On or about July 7, 2025, CHUKKA and/or their agents, servants, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances, based on the following acts and/or omissions:

a. Created an unreasonably dangerous vessel environment by, *inter alia*, a) operating the vessel too fast for the given sea and wind conditions; b) failing to properly navigate oncoming waves and/or foreseeable sea/wind conditions; and c) failing to reasonably secure and protect passengers in the vessel;

b. Operated the vessel at excessive or unsafe speeds given the circumstances or conditions of a) wave height; b) sea volatility; and c) wind conditions, which prevented the vessel operator from providing a safe response to oncoming waves and sea conditions;

c. Failed to reduce speed in rough seas, which prevented a safe response to oncoming waves and sea conditions;

d. Took wave(s) head-on, instead of at an angle;

e. Failed to "quarter" waves or reasonably adjust course;

f. Failed to anticipate waves' impact on the tour vessel;

g. Failed to maintain a proper lookout;

h. Failed to appreciate the water conditions properly; including the reasonable anticipation of wave sets or sea swells; especially considering the elevated wave height, short wave intervals and swell/wind chop combination on the day of the incident;

i. Failed to reasonably appreciate the effect of the sea and wind conditions on the vessel, and foreseeability of injury, given that rough seas inherently create a) vertical acceleration; and b) slamming forces; which, given the circumstances, required heightened precautions by the vessel operator vis-à-vis its passengers;

j. Failed to provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

k. Failed to suspend or modify the voyage, such as slowing down, changing the route or cancel/delay the subject excursion; and/or

l. Failing to provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warnings.

87. All or some of the above acts and/or omissions by CHUKKA and/or their agents, servants, and/or employees, caused and/or contributed to Plaintiff's injuries she sustained while participating in the subject excursion.

88. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

**COUNT VII – NEGLIGENT FAILURE TO WARN AGAINST CHUKKA**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

89. At all times material hereto, it was the duty of CHUKKA to provide Plaintiff with reasonable care under the circumstances.

90. At all times material hereto, it was the duty of CHUKKA to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to CHUKKA in places where passengers (like Plaintiff) were invited or may reasonably expected to visit beyond the point of disembarkation.

91. On or about July 7, 2025, Plaintiff participated in the subject excursion, which CHUKKA invited and reasonably expected Plaintiff to participate since ROYAL contracted with CHUKKA to operate the excursion and sold Plaintiff the ticket for the excursion.

92. On or about July 5, 2025, CHUKKA and/or its agents, servants, joint venturers and/or employees breached its duty to warn Plaintiff through the following acts and/or omissions:

a. Failure to adequately warn Plaintiff of the dangers associated with participating in the subject excursion, as outlined at paragraph 38;

b. Failure to adequately warn Plaintiff that if she took the tour, she would not "glide across the Caribbean Sea"; as in reality, the vessel operator operated the vessel unreasonably fast for the given sea, wave and wind conditions; the given natural sea and wind conditions caused the shore excursion vessel to lift up and forcibly slam down on the sea; and given the natural sea and wind conditions, shore excursion participants were, or could have been, ejected from their seats; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

c. Failure to adequately warn Plaintiff that ROYAL did not fully own and operate the subject tour; but in reality, CHUKKA owned and operated, in full or in part, the subject tour;

d. Failure to adequately warn Plaintiff that CHUKKA would operate the tour vessel unreasonably fast for the given sea, wave and wind conditions; such that the subject tour was unreasonably dangerous as these dangerous conditions would foreseeable cause tour participants injury;

e. Failure to adequately warn Plaintiff that CHUKKA would fail to properly navigate oncoming waves and/or foreseeable sea/wind conditions;

f. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably secure and protect passengers in the vessel;

g. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably reduce speed of the tour vessel in rough seas, which prevented a safe response to oncoming waves and sea conditions;

h. Failure to adequately warn Plaintiff that CHUKKA would operate the tour vessel into wave(s) head-on, instead of at an angle;

i. Failure to adequately warn Plaintiff that CHUKKA would fail to maintain a proper lookout;

j. Failure to adequately warn Plaintiff that CHUKKA would fail to reasonably appreciate the effect of the sea and wind conditions on the tour vessel, and foreseeability of passenger injury, given that rough seas inherently create i) vertical acceleration; and ii) slamming forces; which, given the circumstances, required heightened precautions by the vessel operator vis-à-vis its passengers;

k. Failure to adequately warn Plaintiff of seats on the vessel that were not safe to sit in as opposed to seats that were safe, or safer, to sit in, given the circumstances of the voyage; including but not limited to reasonably warning and/or prohibiting Plaintiff from sitting at a seat at the front of the vessel, especially given the speed at which the vessel was being operated and the sea/wind conditions at the time of the voyage;

l. Failure to adequately warn Plaintiff that CHUKKA would not provide adequate restraints and/or reasonable safeguards aboard the vessel, such as seat belts, grab rails and/or safe seating designed for the anticipated voyage (such as seating designed for high impact waves with adequate shock absorption; in this case, the seats aboard the vessel were aluminum benches);

m. Failure to adequately warn Plaintiff that CHUKKA would not provide crew with adequate training on rough sea vessel operation; such as speed reduction and/or passenger warning.

93. The above acts and/or omissions caused and/or contributed to Plaintiff's injuries sustained while participating in the subject excursion because Plaintiff would not have purchased tickets for and/or participated in the subject excursion had CHUKKA and/or its agents, servants, and/or employees adequately warned and/or communicated the foregoing to her.

94. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

**COUNT VIII – NEGLIGENCE AGAINST DEFENDANTS BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

95. At all times material hereto, CHUKKA was the apparent agent(s) of ROYAL.

96. At all times material hereto, ROYAL is estopped to deny that CHUKKA was its agent(s) or employee(s).

97. At all times material hereto, ROYAL made manifestations which caused Plaintiff to believe that CHUKKA had authority to act for the benefit of ROYAL. These manifestations included, but were not limited to:

a. ROYAL allowed its name to be utilized in connection with the advertising of CHUKKA; and/or

b. ROYAL made all arrangements for the subject excursion without reasonably or effectively disclosing to Plaintiff that the subject excursion was being run by CHUKKA; and/or

c. ROYAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without reasonably or effectively disclosing to the Plaintiff that the subject excursion was being run by CHUKKA; and/or

d. ROYAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

e. Until the point that Plaintiff actually participated in the subject excursion, Plaintiff's exclusive contacts concerning the subject excursion was with ROYAL; and/or

f. ROYAL recommended to Plaintiff to not engage in excursions, tours or activities that are not sold through ROYAL as ROYAL has no familiarity with other tours or their operations; and/or

g. The fee for the excursion was charged to Plaintiff, and collected from Plaintiff, exclusively by ROYAL; and/or

h. Plaintiff received the receipt for the purchase of the subject excursion exclusively from ROYAL.

98. Plaintiff reasonably relied on the above, to her detriment, so as to believe that CHUKKA was the employee(s) and/or agent(s) of ROYAL in choosing the subject excursion.

99. It was reasonable for Plaintiff to believe that CHUKKA was ROYAL's employee(s) and/or agent(s) because Plaintiff booked, paid for and made all necessary arrangements for the subject excursion with ROYAL. ROYAL's actions caused Plaintiff to believe that CHUKKA had authority to act on ROYAL's behalf. At no time did CHUKKA represent to the ship's passengers, or Plaintiff in particular, in any meaningful way, that CHUKKA was not agent(s) or employee(s) of ROYAL.

100. Plaintiff's reasonable reliance was detrimental because Plaintiff would not have booked, paid for and/or participated in the subject excursion or incur any injuries had Plaintiff known that the subject excursion was not operated by ROYAL; because had she known this, she would have decided to not participate in the subject tour.

101. The foregoing acts of negligence of ROYAL and/or the CHUKKA, as alleged in the various counts herein, which are incorporated into this Claim by reference, were a direct and proximate cause of Plaintiff's injuries and damages.

102. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed: Plaintiff suffered physical and emotional pain and suffering, lost of function, sustained permanent disability, incurred medical expenses, lost wages and earning capacity, lost the value of her cruise and vacation, and suffered other damages that will be proven at trial.

**WHEREFORE**, the Plaintiff demands recovery from Defendants all damages recoverable under the law and demands a trial by jury.

## COUNT IX – *QUASI IN REM* "MARITIME RULE B" ATTACHMENT AND GARNISHMENT AGAINST CHUKKA IN THE ALTERNATIVE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-nine (49) as though alleged originally herein, and further alleges:

103. Plaintiff brings this claim in the alternative, in the event this Court finds it does not have personal jurisdiction over CHUKKA.

104. This claim falls within the Court's admiralty and maritime subject matter jurisdiction, as it is a claim that arises from injuries to passengers during a cruise on navigable waters. *See Ash v. Royal Caribbean Cruises Ltd.*, 13-20619-CIV-Goodman, 2014 WL 2480612 (S.D. Fla. June 3, 2014) (finding that admiralty jurisdiction existed for cruise passengers' Rule B

claim against a land-based shore excursion operator providing transportation for cruise passengers to and from an excursion).

105. The Plaintiff files this Complaint and respectfully requests that this Honorable Court attach and/or garnish the belongings of Defendant, CHUKKA that are in the possession of Garnishees, CARNIVAL CORPORATION, NCL (BAHAMAS) LTD., NCL CORP. LTD., ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, CELEBRITY CRUISES INC. and/or MSC CRUISES (USA) LLC, presently within this District.

106. Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure expressly states that "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process." FRCP SUPP AMC Rule B(1)(a).

107. In the alternative, Defendant CHUKKA cannot be found within the Southern District of Florida, as it operates its business in the U.S. Virgin Islands.

108. CHUKKA's belongings located within this judicial district are the past, present and future earnings from their Tour Operator and/or Shore Excursion Agreement(s), and/or any other agreements with Garnishees, CARNIVAL CORPORATION, NCL (BAHAMAS) LTD., NCL CORP. LTD, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, NCL (BAHAMAS) LTD., CELEBRITY CRUISES INC. and/or MSC CRUISES (USA) LLC. This includes, but is not limited to, all moneys owing under the aforementioned agreements from the Garnishees (directly or indirectly from any of the Garnishees' entities, affiliates and/or agents) to CHUKKA, and/or any person and/or entity acting as agent and/or collecting moneys for CHUKKA.

109. The amount of damages sought in this action, including unliquidated damages and attorneys' fees in this action, is an amount in excess of $5,000,000.00 United States Dollars.

**WHEREFORE**, the Plaintiff demands for process to attach CHUKKA's tangible or intangible personal property, up to the amount sued for, in the hands of the Garnishees named in the process, to satisfy Plaintiff's claims raised herein.

**FACTUAL ALLEGATIONS COMMON TO MEDICAL CLAIMS AGAINST ROYAL**

110. On July 7, 2025, after Plaintiff sustained her back injury on the subject tour, Plaintiff requested a wheelchair to help her board the cruise vessel and transfer her to the vessel's shipboard medical center. When Plaintiff got to the ship's medical center, ROYAL's nurse told Plaintiff the vessel's medical center would not treat her because she booked her excursion online prior to boarding the cruise vessel.

111. On July 8, 2025, Plaintiff went back to the vessel's medical center and again requested to be evaluated by the vessel's doctor. ROYAL nurse told Plaintiff she needed to pay upfront in order to be seen by the doctor and that the doctor was not available at that time. Plaintiff agreed to come back to the medical center the next day.

112. On July 9, 2025, Plaintiff was seen at ROYAL's shipboard medical center. Upon examination, ROYAL's doctor immediately realized Plaintiff's back injury was very serious and Plaintiff's medical condition required urgent shoreside attention. Plaintiff was then transferred to a medical center in St. Maarten, U.S. Virgin Islands.

113. On July 11, 2025, Plaintiff underwent an emergency spinal fusion surgery in a Florida hospital.

114. As a direct result of ROYAL's two (2) day delay in evaluating Plaintiff's injury and arranging her shoreside medical transfer, resulting in a four (4) day delay in Plaintiff receiving

medical care in an appropriate and/or U.S. hospital, Plaintiff's suffered additional pain and suffering as her unstable back injury became worse with the passage of time without proper medical care, Plaintiff developed medical complications, including but not limited to the onset of Kummell's disease and/or Plaintiff suffered separate injury/ies as a direct result of ROYAL's unreasonable delay and/or refusal to provide Plaintiff prompt and proper medical attention.

115. At all times material hereto, ROYAL created, owned, managed, maintained and/or operated the medical facility aboard the vessel.

116. At all times material hereto, ROYAL owned, operated, controlled, managed, and/or maintained the medical equipment in the medical facility aboard the vessel.

117. At all times material hereto, ROYAL maintained, controlled, ordered and/or supplied the medicine and/or medical equipment, including diagnostic equipment, like an x-ray machine, for the medical facility aboard the vessel.

118. At all times material hereto, ROYAL staffed the medical facility aboard the vessel with a doctor(s) and/or a nurse(s). At all times material, the doctor(s) and nurse(s) aboard the vessel were full-time employees of ROYAL, subject to ROYAL's control, as ROYAL controlled the day-to-day activities of the medical intake personnel, shipboard doctor(s) and nurse(s) aboard the vessel (hereinafter collectively referred to as the "Medical Personnel").

119. At all times material hereto, ROYAL had control and/or the right to control any and all members of the Medical Personnel working in ROYAL's medical facility aboard the vessel, including the medical doctors, nurses and other medical personnel.

120. At all material times, ROYAL hired, retained, and/or had the right and ability to fire members of the Medical Personnel it carried aboard the vessel.

121. At all times material hereto, the members of ROYAL's Medical Personnel were in the regular, full-time employment of the vessel, as salaried members of the crew, subject to the

vessel's discipline and the master's orders, and also under the control of ROYAL's shoreside medical department located in Miami, Florida, through modern means of communication such as "Face-to-Face Telemedicine."

122. At all times material hereto, the Medical Personnel were employees, actual agents, apparent agents, and/or joint venturers of ROYAL, and at all times material hereto, acted within the course and scope of their employment, agency, and/or joint venture relationship.

123. At all material times, ROYAL was responsible for, and liable for, the actions of the Medical Personnel with respect to treatment, or lack of treatment, of Plaintiff, based on theories of *respondeat superior*, apparent agency and/or joint venture.

124. At no time did ROYAL represent to Plaintiff in particular, or to the vessel's passengers in general, in a meaningful way, that the Medical Personnel were not agents or employees of Royal Caribbean, and/or that they were independent contractors.

125. ROYAL, as the owner and operator of the *Rhapsody of the Seas* – a cruise vessel carrying more than carrying 250 passengers, with overnight berths, embarking/disembarking in the U.S. – must comply with 46 U.S.C. § 3509. *See* Cruise Vessel Security and Safety Act of 2010, "CVSSA", 46 U.S.C. § 3507.

126. 46 U.S.C. § 3509, as part of the CVSSA, provides:

> The owner of a vessel to which section 3507 [46 USC § 3507] applies shall ensure that—
>
> (1) **a physician is always present and available to treat any passengers who may be on board the vessel in the event of an emergency situation**;
>
> (2) the vessel is in compliance with the Health Care Guidelines for Cruise Ship Medical Facilities established by the American College of Emergency Physicians; and
>
> (3) the initial safety briefing given to the passengers on board the vessel includes—
>
> (A) the location of the vessel's medical facilities; and

(B) the appropriate steps passengers should follow during a medical emergency.

46 U.S.C. § 3509 (emphasis added).

127. Further, ROYAL advertises on their website that: "Our doctors also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. Royal Caribbean Group also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, our goal is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility." (underline emphasis added). An excerpt of Royal Caribbean's website which supports the above text, which was in effect at the time of Plaintiff's incident, is excerpted below:

> What licensed medical staff/doctor and services are available onboard a Royal Caribbean cruise ship?
>
> Every Royal Caribbean ship offers limited professional medical services through licensed (international or domestic) physicians and nurses. All Royal Caribbean Group ships have shipboard medical facilities that are built, staffed, stocked, and equipped to meet or exceed guidelines established by the American College of Emergency Physicians Cruise Ship & Maritime Medicine Section.
>
> Depending on the size of the ship and number of passengers and crew members, each RCG ship has two to three licensed doctors and three to five licensed nurses available to passengers and crew members 24/7. Our doctors do not have NPI numbers, as that is a US-based requirement, instead they use tax IDs.
>
> Our medical facilities are stocked with a variety of equipment including cardiac monitors, automated external defibrillators, ventilators, x-ray machines and processors, laboratory equipment, a formulary of acute care medications, and a variety of minor surgical and orthopedic supplies. Our doctors also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. Royal Caribbean Group also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, our goal is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility.
>
> If you have been treated onboard, and need to request your medical records, please fill out the request form.

https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations (last accessed February 5, 2026).

128. ROYAL owed Plaintiff a duty of care to provide reasonably competent medical services under theories of liability that include, but are not limited to:

a. **As a cruise ship operator and common carrier vis-à-vis Plaintiff, who held the status of a lawful passenger aboard the vessel, Royal Caribbean owed Plaintiff a common law duty to exercise reasonable care under the circumstances.** *Kermarec v. Compagnie,* 358 U.S. 625, 632, 79 S. Ct. 406, 410 (1959) ("We hold that the owner

of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case"); *Kantrow v. Celebrity Cruises, Inc.*, 510 F. Supp. 3d 1311, 1323 (S.D. Fla. 2020) ("Defendant does not argue—and cannot seriously contend—that it does not owe its passengers a duty of reasonable care during the boarding process"); *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1320 (S.D. Fla. 2015) (observing that "cruise ship operators are common carriers with a 'continuing obligation of care for their passengers'").

b. **46 U.S.C. § 3509, which requires that "a physician is always present and available to treat any passengers who may be on board the vessel in the event of an emergency situation"**.

c. **ROYAL undertook a duty of care:**

   i. Based on the fact that ROYAL set up a medical center on its vessel; and

   ii. Given its representation that "In responding to medical emergencies, our goal is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility". https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations (emphasis added).

129. Prior to Plaintiff's incident, ROYAL knew or should have known that its failure to provide cruise passengers with reasonably competent emergency medical care would cause the passengers injury and/or aggravation of the passenger's condition(s). *See e.g. Schuman v. Royal Caribbean Cruises Ltd.,* Case No. 23-cv-24404 (S.D. Fla. 2023); *Lejano v. Royal Caribbean Cruises Ltd.,* Case No. 24-cv-20772 (S.D. Fla. 2024); *Murphy v. Royal Caribbean Corp.*, Case No. 19-cv-21450 (S.D. Fla. 2019); *Gharfeh v. Royal Caribbean Corp.*, 309 F. Supp. 3d 1317 (S.D. Fla. 2018); *Rinker v. Royal Caribbean Corp.*, Case No. 09-cv-23154 (S.D. Fla. 2010).

**COUNT X – GENERAL MEDICAL NEGLIGENCE AGAINST ROYAL**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8), sixteen (16) through seventeen (17), thirty (30) through thirty-nine (39) and one hundred and ten (110) to one hundred twenty-nine (129), as though alleged originally herein, and further alleges:

130. At all times material, ROYAL owed Plaintiff a duty to exercise reasonable care

under the circumstances.

131. Between July 7-8, 2025, ROYAL breached its duty to exercise reasonable care under the circumstances by:

a. Failing to reasonably and/or promptly evaluate Plaintiff's back injury;

b. Refusing to and/or delaying prompt evaluation Plaintiff's back injury;

c. Refusing to and/or delaying Plaintiff's medical transfer to an appropriate shoreside medical facility;

d. Failing to carry, utilize and/or reasonably maintain proper x-ray diagnostic machines on the vessel;

e. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist.

132. As a direct and proximate result of the negligence of Defendant, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against ROYAL.

## COUNT XI – MEDICAL NEGLIGENCE FAILURE TO WARN AGAINST ROYAL

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8), sixteen (16) through seventeen (17), thirty (30) through thirty-nine (39) and

one hundred and ten (110) to one hundred twenty-nine (129), as though alleged originally herein, and further alleges:

133. At all times material, ROYAL owed Plaintiff a duty to exercise reasonable care under the circumstances.

134. Further, and as part of the above mentioned duty, at all times material ROYAL owed Plaintiff a duty to warn of dangers that were known, or reasonably should have been known, to ROYAL, in places where passengers like Plaintiff were invited or were reasonably be expected to visit, including, but not limited to, in the ship's medical facility and/or as it pertains to the medical services ROYAL offered and/or provided to passengers.

135. Between July 8-9, 2025, ROYAL breached its duty to exercise reasonable care under the circumstances, including the duty to warn, and Plaintiff was thereby injured due to the fault and negligence of ROYAL as follows:

a. Failure to reasonably warn passengers, including Plaintiff, that ROYAL would not reasonably or promptly evaluate Plaintiff's injury if she were injured during the cruise; and/or

b. Failure to reasonably warn passengers, including Plaintiff, that ROYAL would not reasonably or promptly assist Plaintiff obtain shoreside medical care if she were injured during the cruise.

136. As a direct and proximate result of the negligence of ROYAL, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the

future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against ROYAL.

**COUNT XII – NEGLIGENCE AGAINST ROYAL FOR THE NEGLIGENT CONDUCT OF ITS SHIPBOARD AND SHORESIDE PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER *RESPONDEAT SUPERIOR***

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8), sixteen (16) through seventeen (17), thirty (30) through thirty-nine (39) and one hundred and ten (110) to one hundred twenty-nine (129), as though alleged originally herein, and further alleges:

137. At all times material hereto, the Medical Personnel included the ship's medical intake personnel, doctors and nurses aboard the vessel.

138. At all times material hereto, the Medical Personnel were agents, servants and/or employees of ROYAL.

139. At all times material hereto, the Medical Personnel and ROYAL's shoreside medical doctors were acting within the scope of their employment and/or agency with ROYAL.

140. At all times material hereto, ROYAL acknowledged that the Medical Personnel would act on ROYAL's behalf, and the Medical Personnel accepted the undertaking, based on the following:

a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by ROYAL.

b. ROYAL's logo and insignias were displayed in various places throughout the medical facility.

c. ROYAL's website publicly described the medical facility in proprietary language, including, but not limited to, "<u>our</u> medical facilities…"

d. ROYAL billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and ROYAL did so through passengers' onboard accounts with ROYAL.

e. The Medical Personnel were employed full-time by ROYAL.

f. The Medical Personnel were paid a salary by ROYAL.

g. The Medical Personnel wore uniforms and/or nametags, which were provided by ROYAL and had ROYAL's name and logo.

h. The Medical Personnel referred to themselves as crewmembers, and ROYAL referred to the Ship's Doctors and Ship's Nurses as ship's officers.

i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by ROYAL to make decisions as to Plaintiff's medical incident and needs on ROYAL behalf.

141. At all times material hereto, the Medical Personnel were subject to the control and/or right to control by ROYAL, based on the allegations set forth in the preceding paragraph, along with the following:

a. The Medical Personnel were employed full-time by ROYAL, paid a salary by ROYAL, and worked in the medical facility aboard the vessel which at all times material was created, owned maintained and/or operated by ROYAL.

b. ROYAL stocked and equipped the medical facility, and as such, the equipment (including diagnostic) and medications necessary for the Medical Personnel to perform their work was furnished by ROYAL.

c. The Medical Personnel were subject to ROYAL's training requirements and were under the commands of ROYAL's ship's officers and the master's rules and regulations.

d. ROYAL maintained control over the day-to-day operations and/or duties of the Medical Personnel.

e. ROYAL had the right to fire the Medical Personnel.

142. At all times material hereto, ROYAL had a duty to provide Plaintiff with reasonable care under the circumstances.

143. At all times material hereto, ROYAL in addition to its shipboard and shoreside medical doctors, owed a duty to exercise reasonable care under the circumstances vis-à-vis Plaintiff.

144. At all times material hereto, ROYAL, through the acts/omissions of its shipboard and shoreside medical doctors, breached their duty to exercise reasonable care under the circumstances to Plaintiff through the following acts and/or omissions:

a. Failing to reasonably and/or promptly evaluate Plaintiff's back injury;

b. Refusing to and/or delaying prompt evaluation Plaintiff's back injury;

c. Refusing to and/or delaying Plaintiff's medical transfer to an appropriate shoreside medical facility;

d. Failing to carry, utilize and/or reasonably maintain proper x-ray diagnostic machines on the vessel;

e. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist.

145. As a direct and proximate result of the negligence of ROYAL, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against ROYAL.

## COUNT XIII – MEDICAL NEGLIGENCE AGAINST ROYAL FOR THE ACTS OF THE MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER APPARENT AGENCY

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8), sixteen (16) through seventeen (17), thirty (30) through thirty-nine (39) and one hundred and ten (110) to one hundred twenty-nine (129), as though alleged originally herein, and further alleges:

146. At all times material hereto, the Medical Personnel included the ship's doctors and nurses aboard the vessel.

147. At all times material hereto, ROYAL and the Medical Personnel represented to passengers aboard the vessel, including Plaintiff, that the Medical Personnel were ROYAL's agents and/or employees, as follows:

a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by ROYAL.

b. ROYAL's logo and insignias were displayed in various places throughout the medical facility.

c. ROYAL's website publicly described the medical facility in proprietary language, including, but not limited to, "<u>our</u> medical centers…"

d. ROYAL billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and ROYAL did so through passengers' onboard accounts with ROYAL.

e. The Medical Personnel were employed full-time by ROYAL.

f. The Medical Personnel were paid a salary by ROYAL.

g. The Medical Personnel wore uniforms and/or nametags, which were provided by ROYAL and had ROYAL's name and logo.

h. The Medical Personnel referred to themselves as crewmembers, and ROYAL referred to the Ship's Doctors and Ship's Nurses as ship's officers.

i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by ROYAL to make decisions as to Plaintiff's medical incident and needs on ROYAL's behalf.

148. At all times material hereto, Plaintiff reasonably relied on the above, to her detriment, so as to believe that the Medical Personnel were the agents and/or employees of ROYAL in choosing to cruise aboard the vessel and seek medical attention from ROYAL.

149. At all times material hereto, it was reasonable for Plaintiff to believe that the Medical Personnel were authorized to render medical services for ROYAL's benefit because ROYAL billed passengers directly for the onboard medical services, ROYAL's logo and insignias were displayed in various places throughout the medical facility, and/or Royal Caribbean's name and logo were on the Medical Personnel's uniforms and/or nametags. It was also reasonable because ROYAL marketed the shipboard medical facility and/or the Medical Personnel in a manner so as to induce passengers, like Plaintiff, to buy cruises aboard ROYAL's vessels and utilize its medical facility.

150. At all times material hereto, Plaintiff's reasonable reliance was detrimental because, had she known that the Medical Personnel were not ROYAL's agents and/or employees, she would not have decided to cruise with ROYAL nor sought treatment from the Medical Personnel, which ultimately delayed Plaintiff's medical treatment needs.

151. At all times material hereto, ROYAL had a duty to exercise reasonable care under the circumstances vis-à-vis, including through the conduct of its apparent agents.

152. At all times material hereto, ROYAL breached its duty to exercise reasonable care under the circumstances through the following acts and/or omissions of its shipboard and shoreside medical doctors:

a. Failing to reasonably and/or promptly evaluate Plaintiff's back injury;

b. Refusing to and/or delaying prompt evaluation Plaintiff's back injury;

c. Refusing to and/or delaying Plaintiff's medical transfer to an appropriate shoreside

medical facility;

d. Failing to carry, utilize and/or reasonably maintain proper x-ray diagnostic machines on the vessel;

e. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist.

153. As a direct and proximate result of the negligence of ROYAL, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against ROYAL.

Dated: April 29, 2026

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, FL 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ Luis Alexander Perez*
**LUIS ALEXANDER PEREZ**
Florida Bar No. 125452
aperez@lipcon.com